Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

FILED

MAR 30 2018

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | | |
|---|---|---|
| **CAROL CROWNOVER,** | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No.** |
| **v.** | § | **DR:15-CV-132–AM–CW** |
| | § | |
| **NANCY CROWNOVER, Individually** | § | |
| **and in Her Capacity as Co-Trustee of** | § | |
| **The Running "M" Ranch Irrevocable** | § | |
| **Trust,** | § | |
| **Defendants.** | § | |

## ORDER

Pending before the Court is the Motion to Dismiss Defendant Nancy Crownover in Her Individual Capacity from Plaintiff's "Third Amended Petition" or, in the Alternative, Motion for a More Definite Statement. (ECF No. 62.) After reviewing the motion and the parties' briefings, the Court finds that it should be denied, for the reasons explained below.

## I. BACKGROUND

Melvin M. Crownover, the father of Plaintiff Carol Crownover and Hugh Crownover, died on January 11, 2010, and purportedly devised all of his property to his son, Hugh Crownover ("Hugh"), in a holographic will, to the exclusion of the Plaintiff. (Pl.'s Third Am. Pet., ECF No. 55 at 3.) Because the will was deemed invalid, Hugh did not probate it and instead filed an application for administration of the estate. (*Id.*) Hugh was named the administrator of the estate, and on February 11, 2010, the probate court entered a judgment declaring heirship of the estate equally between Hugh and the Plaintiff. (*Id.* at 3-4.) The bulk of the estate consisted of a 5,952.6 acre ranch in Kinney County and Edwards County, Texas, once valued at over $4 million. (*Id.*)

On March 25, 2010, Hugh, individually and as independent administrator of the estate,

entered into a "Family Settlement and Release Agreement" ("FSA") with the Plaintiff, Melvin Lee Crownover ("Melvin"), and Mattie Elle Crownover ("Mattie"). (*Id.* at 4.) Melvin and Mattie are Hugh's two children with Defendant Nancy Crownover, Hugh's ex-wife. (*Id.*) The parties agreed that in exchange for the Plaintiff's transfer of all of her right, title, and interest in the ranch and the estate, the Plaintiff would receive an interest in certain mineral rights and a promissory note from the estate in the principal amount of $1,200,000, plus interest. (*Id.*) This amount was to be paid in full upon the earlier of (1) the sale of the ranch, or (2) June 2, 2016. (*Id.*) Hugh also agreed to disclaim his interest in the estate, leaving all remaining assets to Melvin and Mattie. (*Id.*) The parties also agreed that no distributions would be made from the estate to Melvin or Mattie, or to Hugh for compensation for serving as administrator of the estate, until the note was paid in full. (*Id.*)

Hugh, in his capacity as administrator of the estate, executed the promissory note on March 25, 2010, naming the Plaintiff as the lender and the estate as the borrower. (*Id.*) Consistent with the FSA, the note reiterated that payment in full would be due upon the earlier of (1) the sale of the ranch, or (2) June 2, 2016. (*Id.* at 5.) That same day, the Plaintiff executed a quitclaim instrument, relinquishing all right, title, and interest in the estate. (*Id.*) The Kinney County Court approved the FSA on April 14, 2010. (*Id.*)

On March 26, 2010, in anticipation of receiving the estate assets, Melvin and Mattie, as settlors, created The Running "M" Ranch Irrevocable Trust Agreement ("the Trust"), naming Hugh and the Defendant as co-trustees. (*Id.*) Hugh, as administrator of the estate, executed an administrator's deed on April 12, 2010, transferring the ranch to Hugh and the Defendant as co-trustees of the Trust. (*Id.*) Melvin and Mattie also executed a special warranty deed, transferring

the ranch to Hugh and the Defendant as co-trustees of the Trust. (*Id.* at 5-6.) Hugh, as administrator of the estate, transferred the promissory note to the Trust on the same day. (*Id.* at 6.)

On August 12, 2011, Hugh, acting as co-trustee, sold the ranch to Jay Balentine and Darrell Apfell by special warranty deed with vendor's lien. (*Id.*) The Plaintiff received payments on the note in the amounts of $25,000, $215,000, $5,000, and $40,000. (*Id.* at 7.) The Defendant then disputed the obligation of the Trust to pay the note in full and refused to make any more payments on the note. (*Id.*)

The Plaintiff then filed suit in the 63rd Judicial District Court of Kinney County, Texas, against Hugh and the Defendant in their capacities as co-trustees of the Trust, alleging causes of action for breach of contract, unjust enrichment, fraud, and contractual interference. (ECF No. 1-1 at 2-9. ) The Plaintiff then amended the petition to add claims against Hugh and the Defendant in their individual capacities. (*Id.* at 40-54.) Hugh, a Texas citizen, was eventually nonsuited after an Oklahoma court removed him as trustee of the Trust. (ECF No. 1-6 at 19.) The Defendant, an Oklahoma citizen, then removed the case to federal court based on diversity jurisdiction. (*See* Notice of Removal, ECF No. 1.)

After resolution by the Court of (1) a motion to dismiss the Defendant based on lack of personal jurisdiction (ECF No. 13), and (2) the Plaintiff's motion for leave to amend her complaint, the Plaintiff then filed her third amended complaint (ECF No. 55).[1] In the complaint, the Plaintiff brings seven causes of action against the Defendant in her individual capacity and in her capacity as trustee: (1) breach of contract; (2) unjust enrichment/money had and received; (3) common-law

---

[1] The Plaintiff refers to the filing as a petition, a term used in state courts. Because federal courts use the term complaint, the Court will likewise do so, unless referencing the document by name.

fraud based on fraudulent misrepresentation; (4) fraud by nondisclosure; (5) statutory fraud under Texas Business & Commerce Code § 27.01; (6) tortious interference with existing contractual relations; and (7) fraudulent transfers under Texas Business & Commerce Code § 24.005.  The Court, however, previously dismissed claims against the Defendant in her individual capacity for breach of contract, common law fraud, fraud by nondisclosure, statutory fraud, and unjust enrichment, although without prejudice.  (ECF No. 13.)

According to the third amended complaint, the sale of the ranch triggered payment in full of the note, which, as of March 4, 2016, had a principal balance and accrued interest of at least $1,408,969.71.  (ECF No. 55 at 7.)  But despite the sale of the ranch, the Defendant has only paid the Plaintiff a total of $285,000, while draining the Trust assets and using the proceeds of the ranch sale on imprudent purchases and investments, such as (1) spending $50,000 on a herd of show goats, (2) purchasing a private home in Ruidoso, Mexico, for Hugh and the Defendant's personal use, (3) buying trucks and guns for personal use, and (4) using Trust assets as leverage to finance other purchases.  (*Id.* at 8.)  According to the Plaintiff, because of this mismanagement, almost all of the Trust's assets are now encumbered by liens and unavailable to satisfy the note.  (*Id.*)

On March 21, 2017, the Defendant filed the present motion to dismiss the two claims against her in her individual capacity that the Court declined to dismiss previously, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In making her arguments, the Defendant contends that Oklahoma law, not Texas law, should apply in the analysis.  In support of dismissal, the Defendant argues that the complaint only alleges facts done by Hugh or her as trustee and is devoid of any facts of what she did in her individual capacity.  Alternatively, the Defendant moves for a more definite statement, claiming the pleading is too vague or ambiguous to reasonably prepare a response.  The

4

Defendant also criticizes the Plaintiff's inclusion of the previously dismissed claims in the third amended complaint, arguing that the behavior is sanctionable.

After the Defendant filed the present motion to dismiss, the Trust declared bankruptcy in the Eastern District of Oklahoma. (*See* Notice of Suggestion of Bankr., ECF No. 86.) Although the bankruptcy resulted in an automatic stay for purposes of any causes of action brought against the Defendant in her capacity as trustee, 11 U.S.C. § 362(a)(1), it did not affect claims against the Defendant in her individual capacity.

## II. CHOICE OF LAW

The first issue the Court must resolve is whether Texas law or Oklahoma law applies. The Defendant, as trustee, who has also filed a motion to dismiss (but is represented by separate counsel), *see* ECF No. 58, applies Texas law to the same claims.[2] The Defendant, individually, however, argues that Oklahoma law applies because she is an Oklahoma resident, the Trust was formed in Oklahoma, and the alleged acts occurred in Oklahoma.

"When sitting in diversity jurisdiction, federal courts apply the choice-of-law rules of the forum state." *Abbasid, Inc. v. Bank of Am., N.A.* 463 F. App'x 317, 318 (5th Cir. 2012). Texas uses the Restatement (Second) of Conflict of Laws' "most significant relationship" test. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (citing Restatement (Second) of Conflict of Laws §§ 6, 145 (1971)). "Texas courts presume that other states' laws are the same as its own; the party advocating use of a different state's laws bears the burden of rebutting that presumption." *Abbasid*, 463 F. App'x at 319. "Although federal courts must take judicial notice of the laws of

---

[2] Again, the case against the Defendant as trustee is stayed pending the resolution of bankruptcy proceedings. Therefore, the motion to dismiss the Defendant as trustee (ECF No. 58), as well as a motion for summary judgment (ECF No. 46), are likewise stayed.

every state, Texas choice-of-law rules place the burden on [the Defendant] to show how the application of [Oklahoma] law compels a result different from what Texas law would yield." *Playboy Enters., Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013). "Although parties are not required to plead choice-of-law issues at the outset of a case, they must raise them 'in time to be properly considered.'" *Abbasid.* 463 F. App'x at 318 (quoting *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987)).

Despite being warned of its burden, *see* ECF No. 51 n.2, the Defendant has failed to address the initial step of demonstrating that Oklahoma law would compel a different result from Texas law. In fact, the Defendant cites to Texas law in footnotes, then argues that it is essentially *identical* to Oklahoma law and would compel the same result. (*See* ECF No. 62 at 6 n.1, 7 n.2.) It is the movant's burden, not the burden of the Court, to point to differences between the two states' laws. *Janvey v. Alguire*, 846 F. Supp. 2d 662, 671 (N. D. Tex. 2011) ("Texas choice of law rules require the party urging application of another state's substantive law to furnish the Court with sufficient information to establish that the law of another state applies.") (internal quotations omitted). Because the Defendant has failed to meet her initial burden, the Court concludes that Texas law should apply.[3]

### III. MOTION TO DISMISS

#### A. Applicable Standard

The next question is whether the Defendant is entitled to dismissal of the two remaining claims against her: (1) fraudulent transfer, and (2) tortious interference with contract. Federal Rule

---

[3]The presumption that Texas law applies "is especially apposite in the TUFTA context because the Texas Legislature adopted TUFTA with the specific purpose that it be applied uniformly with other states' versions of the Uniform Fraudulent Transfer Act." *Alguire,* 846 F. Supp. 2d at 671 (citing Tex. Bus. & Comm. Code § 24.012).

of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that "[fails] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss, however, "is viewed with disfavor and is rarely granted." *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (internal quotations omitted). Accordingly, the complaint must be liberally construed in the plaintiff's favor, all reasonable inferences must be drawn in favor of the plaintiff's claims, and the factual allegations of the complaint must be taken as true. *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir. 1986).

In determining whether a complaint fails to state a claim, the Court must look to Rule 8 of the Federal Rules of Civil Procedure, which requires pleadings to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To comply with Rule 8, a plaintiff must include enough facts to give a defendant fair notice of the claims against it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To meet this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Pleading fraud with particularity "requires the plaintiff to allege 'the particulars of time, place and contents of the false representations, as well as

7

the identity of the person making the misrepresentation and what [that person] obtained thereby.'"
*Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). "To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Id.*

A motion for a more definite statement filed pursuant to Rule 12(e) of the Federal Rules of Civil Procedure should only be granted "when the pleading to which it is addressed is so vague that it cannot be responded to . . . ." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1377 (3d ed. 2004). "In view of the great liberality of [Rule 8], permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959).

**B. Legal Analysis**

**1. Fraudulent Transfer Claim**

The Defendant first seeks dismissal of the fraudulent transfer claim. The Defendant argues that allegations added to the third amended complaint "provide nothing more than conclusory statements and unfounded allegations against Defendant in an attempt to argue that Defendant is liable in her individual capacity." (ECF No. 62 at 6.)

**a. TUFTA**

The Texas Uniform Fraudulent Transfer Act (TUFTA), Tex. Bus. & Com. Code §§ 24.001-24.013, operates to void "transfers by a debtor who intends to defraud creditors by placing assets

beyond their reach." *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 205 (Tex. App. 2014).[4]  Section 24.005(a) states:

> (a)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

§ 24.005(a)(1)-(2).

Claims under section 24.005(a)(2) are considered constructive fraudulent claims, since no proof of actual intent to defraud is required. *In re 7677 Real Street, LLC*, No. 01-16-00683-CV, 2017 WL 4366033 (Tex. App. Oct. 3, 2017) (citing *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562 (Tex. 2016)).  "[C]onstructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interest." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964).

---

[4]A transfer is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and recreation of a lien or other encumbrance."  § 24.002(12).

In contrast, claims under section 24.005(a)(1) are considered actual fraudulent transfers, which "usually involve[] dishonesty of purpose or intent to deceive . . . ." *Id.* To demonstrate a fraudulent transfer claim involving actual fraud under section 24.005(a)(1), the Plaintiff must demonstrate that (1) she is a creditor who has a claim against a debtor, (2) the debtor transferred assets after, or a short time before, the Plaintiff's claim arose, and (3) the transfers were made by the debtor "with the intent to hinder, delay, or defraud" the debtor. *Nwokedi*, 428 S.W.3d at 204-05; § 24.005(a)(1).

"As direct evidence of actual fraud is often scarce, TUFTA 'supplies a non-exclusive list of eleven factors, commonly known as badges of fraud, that courts may consider in determining whether a debtor actually intended to defraud creditors under TUFTA.'" *In re Ritz*, 832 F.3d 560, 568 (5th Cir. 2016) (quoting *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 437 (5th Cir. 2013)). Consideration may be given as to whether:

> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;
>
> (3) the transfer or obligation was concealed;
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) the transfer was of substantially all the debtor's assets;
>
> (6) the debtor absconded;
>
> (7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;[5]

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;[6]

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

§ 24.005(b). "An individual badge of fraud is not conclusive but a concurrence of many badges of fraud in the same case can make a strong case of fraud." *Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 454 (Tex. App. 2012).

"In general, a determination of liability under TUFTA is a two-step process: first, a finding that a debtor made an actual, fraudulent transfer, TUFTA § 24.005(a)(1), or a constructive, fraudulent transfer, *id.* § 24.005(a)(2); and second, recovery of that fraudulent transfer, or its value, from the transferees, *id.* §§ 24.008-24.009." *Spring Street Partners*, 730 F.3d at 436. Under section 24.008, creditors may obtain:

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the

---

[5]"Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person. § 24.004(a). "'Reasonably equivalent value' includes without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." § 24.004(b).

[6]A debtor is considered insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." § 24.003(a). "A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent." § 24.003(b).

applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings; or

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) any other relief the circumstances may require.

§ 24.008. Judgment is generally "'for the value of the asset transferred,' not the specific asset itself, which in many cases left the defendant's possession long ago." *Alguire*, 846 F. Supp. 2d at 673 (quoting § 24.009(b)).

**b. The Plaintiff's Complaint**

Although the Plaintiff's third amended complaint only asserts one general TUFTA cause of action, the allegations pertain to both an actual fraudulent transfer claim and a constructive fraudulent transfer claim. According to the Plaintiff, the Defendant and Hugh devised a scheme to transfer the ranch to the Trust where the Defendant and Hugh would control the ranch property as co-trustees. (Pl.'s Third Am. Pet., ECF No. 33 at 13.) Hugh, as independent administrator of the estate, executed an "Administrator's Deed," transferring the ranch to Hugh and the Defendant as co-trustees. (*Id.* at 5.) Melvin and Mattie executed a special warranty deed, transferring the ranch to Hugh and the Defendant as co-trustees. (*Id.* at 5-6.)

The Plaintiff alleges that the transfer of the ranch to the Trust prior to full payment of the note was fraudulent as it was made with actual intent to hinder, delay, or defraud the Plaintiff from collecting the debt evidenced by the note. (*Id.* at 13.) In support, the Plaintiff alleges that these deed

transfers were made without the estate receiving a reasonable equivalent value in exchange for the ranch, *id.* at 6, thus leaving the estate without adequate funds to repay the note, *id.* at 8, since the bulk of the estate consisted of the ranch property, *id.* at 3, 14.  The Plaintiff also alleges that the transaction was one for which the remaining assets of the estate were unreasonably small in relation to the transaction, leaving the estate insolvent and unable to repay the note.  (*Id.* at 14.)

The Plaintiff further alleges that after payment on the note was due in full, Hugh and the Defendant, as co-trustees, used Trust proceeds from the sale of the ranch for the benefit of the Defendant in her trustee capacity and her own personal benefit and enrichment, including providing herself unspecified salaries and health insurance.  (*Id.* at 8, 13.)  The Defendant also wasted resources on eclectic and extravagant purchases, by (1) spending $50,000 on show goats, (2) buying a private home in Ruidoso, Mexico, and living rent-free in it, and (3) buying a cache of guns, a tractor, and two trucks, all for her personal use.  (*Id.* at 8.)  The Plaintiff alleges that the transfer of the proceeds to the Defendant and Hugh for personal benefits was of a substantial portion of the Trust's assets, so that the Trust could not repay the note obligation.  (*Id.*)  As a consequence, the Plaintiff alleges that most of the Trust's assets are encumbered by liens and insufficient to satisfy the note.  (*Id.* at 8, 13.)  Finally, the Plaintiff alleges that the Defendant was an insider for purposes of TUFTA, since at the time of the transfers, the Trust retained possession or control of the ranch and the proceeds after the transfer was completed.  (*Id.* at 14.)

**c.  Personal Liability**

According to the Defendant, dismissal of the claim against her is warranted because there are

> no allegations that Defendant in her individual capacity made any transfers intended to hinder, delay or defraud creditors.  The allegation is not made because Plaintiff knows that Defendant in her

individual capacity did not have the ability or authority to make any transfers to the [Trust], from the Estate, or from the Trust to anyone else.   Plaintiff still fails to identify a single transfer made by Defendant in her individual capacity that could be construed as a fraudulent transfer.

(ECF No. 62 at 6.)   The Defendant's argument, in other words, is not that there was no fraudulent transfer, or that the complaint fails to meet the overall general pleading requirements of Rules 8, 9, or even Rule 12.[7]   Rather, the Defendant's argument is that the pleadings lack allegations of any fraudulent transfers she made in her individual capacity to hold her personally liable.

The Court finds no merit to the Defendant's argument.  A TUFTA suit "pursues the debtor's fraudulently transferred property and does not result in any personal liability on the part of those responsible for the transfer." *Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928, 934 (Tex. App. 1993).  For that reason, judgment may be entered against: "(1) the first transferee of the asset or the

---

[7]It is unsettled in the Fifth Circuit whether Rule 9 applies to fraudulent transfer claims. *See Janvey v. Alguire*, 647 F.3d 585, 599 (5th Cir. 2011) ("We need not and do not address the issue of whether heightened pleading is required."); *also compare In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) (appearing to apply a liberal pleading standard in determining the sufficiency of a TUFTA claim for purposes of a default judgment) with *Brunswick Corp. v. Vineberg*, 370 F.2d 605 (5th Cir. 1967) (mentioning Rule 9 in finding that a plaintiff had stated a claim under Florida law for the equivalent of a fraudulent transfer claim and a tortious interference with contract claim).  District courts are split, although the majority of courts have held that Rule 9 does not apply, at least for claims involving constructive fraud, since no actual intent to defraud is required under TUFTA .  *See, e.g., Brickley for CryptoMetrics, Inc. Creditors' Tr. v. Scan Tech Identification Beams Sys., LLC*, 566 B.R. 815, 846-89 (W.D. Tex. 2017) (applying Rule 9(b) to section (a)(1) but not section (a)(2)); *AAB Logistics, Inc. v. Forward Air, Inc.*, No. 3:15-CV-3840-G, 2016 WL 8672773, at *9-10 (N.D. Tex. Nov. 18, 2016) (refusing to apply Rule 9 to a TUFTA claim); *Alguire*, 846 F. Supp. 2d at 675-77 (refusing to apply Rule 9 to any part of TUFTA); *In re Crescent Res.*, LLC, Bankr. No. 09-11507-CAG, 2012 WL 195528, at *7 (W.D. Tex. Jan. 23, 2012) ("Rule 9(b) does not apply to claims for avoidance of constructively fraudulent transfers because such claims are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of consideration provided by the transferee.") (quotations omitted) (discussing similar provisions of the Bankruptcy Code); *but see Oakwood Shores Prop. Owners Ass'n, Inc. v. NTP Timber Plus + Fund I, L.P.*, No. 4:15-CV-02313, 2016 WL 4494438, at *4 (S.D. Tex. Aug. 26, 2016) (applying Rule 9(b)).

In accordance with *AAB Logistics* and *Alguire*, the Court finds little sense in applying Rule 9's heightened pleading standard to a fraudulent transfer claim, especially a constructively fraudulent one, since no intent to defraud is required, and because transferees can be liable for the transfers even if there is no knowledge of the fraud.  Notwithstanding, the complaint alleges the requisite who, what, when, where, and why necessary to meet the heightened pleading requirements.

person for whose benefit the transfer was made; or (2) any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." § 24.009(b).  Thus, the Defendant need not be the one who made the transfers.  The complaint establishes that Hugh, as administrator of the estate, transferred the ranch property from the estate to the Defendant and Hugh, as trustees.  Therefore, the Defendant and Hugh were indisputably the first transferees of the ranch property.

Acting in her capacity as trustee does not shield the Defendant from liability.  Historically, trustees have been held personally liable for undertakings by the trust: "When a trustee contracts as such, unless he is bound, no one is bound, for he has no principal.  The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee." *Taylor v. Mayo*, 110 U.S. 330, 335 (1884).  Although some states have enacted legislation to protect a trustee from individual liability, Texas law still contemplates personal liability.  For example, section 114.084 of the Texas Property Code states that a plaintiff "may sue the trustee individually if the trustee made the contract and the contract does not exclude the trustee's personal liability."  Tex. Prop. Code § 114.084(a). Section 114.083, in turn, states that a trustee "is *personally* liable for a tort committed by the trustee or by the trustee's agents or employees in the course of their employment."  § 114.083(d).[8]  Section 114.006 also provides for liability of a trustee for the acts of other co-trustees in certain circumstances.  Therefore, the Defendant is not insulated from personal liability for actions taken by her as trustee or even by Hugh as trustee in accepting the transfer of the ranch.[9]

---

[8] A fraudulent transfer claim is a tort and thus falls under the provisions of section 114.083(d).  *Sargeant v. Al Saleh*, 512 S.W.3d 399, 412 (Tex. App. 2016).

[9] Although other provisions of the Property Code provide for exoneration in certain circumstances and protection from liability for certain acts performed by a co-trustee without the consent of other trustees, the Court is not in the position to evaluate such claims and defenses in the present motion to dismiss.

The Defendant is also potentially personally liable as a subsequent transferee. *See* §
24.009(b)(2). The Plaintiff's allegations establish that the Defendant, as trustee, transferred proceeds
from the sale of the ranch to the Defendant, individually, for personal benefits. According to the
allegations, the Defendant did not take benefits from the Trust for value. She is thus potentially
personally liable for these transfers as well. In sum, because the Plaintiff has alleged a plausible
fraudulent transfer claim against the Defendant in her personal capacity, based on both actual and
constructive fraud, the Defendant is not entitled to dismissal of the individual TUFTA claims against
her.

**2. Tortious Interference of Contract**

The next question is whether the Plaintiff has adequately pleaded a claim for tortious
interference of contract against the Defendant in her individual capacity. Similar to the fraudulent
transfer claim, the Defendant argues that she cannot be held liable because the complaint "fails to
identify anything Defendant did in her individual capacity to interfere with the Note and Family
Settlement Agreement." (ECF No. 62 at 7.) She does not otherwise raise any issue about the
sufficiency of the complaint—only that she can't be held personally liable for her acts as trustee or
Hugh's acts.

**a. Texas Law**

"Texas jurisprudence has long recognized that a party to a contract has a cause of action for
tortious interference against any third person (a stranger to the contract) who wrongfully induces
another contract party to breach the contract." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (5th Cir.
1995). The elements for a claim are: "(1) the existence of a contract subject to interference; (2) a
willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's

damages; and (4) actual damage or loss." *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996). "By definition, the person who induces the breach cannot be a contracting party." *Holloway*, 898 S.W.2d at 795.

"To establish the element of a willful and intentional act of interference, the plaintiff must produce evidence that the defendant was a more-than-willing participant and knowingly induced one of the contracting parties to breach its obligations under the contract." *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 167–68 (Tex. App. 2017). To establish proximate cause, a party must show that "the defendant took an active part in persuading a party to a contract to breach it." *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App. 1992) (emphasis and quotations omitted).

**b. The Plaintiff's Third Amended Complaint**

The complaint alleges that the Defendant willingly and intentionally interfered with the FSA and the payment of the note by making it difficult, if not impossible, to repay the note according to its terms. This was done (1) by planning and effecting the transfer of the ranch from the estate to the Trust without any consideration or security, leaving the estate insolvent and incapable of paying the note, (2) by investing the proceeds from the sale of the ranch into encumbered properties and unauthorized uses, and (3) by intentionally refusing to make payments on the promissory note, despite the sale of the ranch, after acknowledging that the payments were due. (Pl.'s Third Am. Pet., ECF No. 33 at 12-13.) The Plaintiff also alleges that the Defendant diverted and dissipated Trust funds for unauthorized uses, including for her own personal benefit and enrichment, leaving the Trust without adequate funds to pay the note. (*Id.*)

**c. Personal Liability**

The Defendant argues that the claim is subject to dismissal because, similar to the fraudulent transfer claim, "the only way Defendant could have performed any act of non-payment or act of making it difficult to be accomplished would be as a Trustee of the Trust, not individually.  The Plaintiff fails to identify how, when or what Defendant did in her individual capacity to prevent payment." (ECF No. 62 at 7.)

In response to the motion to dismiss, the Plaintiff argues that the Defendant–before becoming a trustee–discussed, negotiated, and planned the execution of the trust at the same time the FSA was being discussed and prepared.  (ECF No. 65 at 8.)  Therefore, the Plaintiff argues that it is logical to conclude from the pleadings that the conduct of Nancy, in her individual capacity, in interfering with the Estate's ability to honor the FSA was prior to the establishment of the Trust and thus prior to the time she became trustee.  (*Id.*)  In her reply, the Defendant contends that the allegations still fail to establish how any alleged interference by the Defendant before becoming trustee would make the estate incapable of honoring the FSA.  (ECF No. 70 at 5.)

The Court finds that dismissal of the claim is not warranted.  As explained previously, there is no merit to the argument that the Defendant cannot be held individually liable for her acts done as trustee—Texas law provides for personal liability of trustees for torts.  Thus, the Plaintiff's allegations against the Defendant as trustee for tortious interference of contract suffice to hold the Defendant personally liable as well.

Moreover, the allegations of acts done by the Defendant prior to becoming trustee are likewise sufficient to hold the Defendant personally liable.  Although the Defendant argues that these allegations fail to identify any interference by the Defendant that would make the estate incapable of honoring the FSA, the allegations establish that the Defendant, prior to becoming trustee,

18

concocted a scheme to transfer the note from the estate to the Trust, leaving the estate without means to honor the FSA or repay the note. Only *proximate* causation is required to state a claim, not immediate causation. Even if the effects of the interference were not seen until after the Defendant became trustee, these allegations still suffice to state a claim against the Defendant. Therefore, the Defendant is not entitled to dismissal of the tortious interference with contract claim.

### 3. Remaining Causes of Action

Finally, the Defendant argues that the claims previously dismissed by the Court should be dismissed again, and in fact argues that the Plaintiff's conduct of repleading the claims is sanctionable. (ECF No. 62 at 2, ECF No. 70 at 3.) In the Plaintiff's third amended complaint, the Plaintiff realleges causes of action for breach of contract, unjust enrichment/money had and received, common-law fraud (fraudulent misrepresentation), fraud by nondisclosure, and statutory fraud, despite the Court previously dismissing the claims.

The Court finds that the claims simply should be disregarded. Although the claims were previously dismissed without prejudice and thus *could* be refiled with leave of the Court, when the Plaintiff was granted with leave to file her third amended complaint, it was under the premise provided by the Plaintiff: "The Third Amended Petition responds to Defendant's motions for a more definite statement. The Third Amended Petition does not add any new causes of action but merely clarifies Plaintiff's existing causes of action." (ECF No. 40 at 2.) There is no mention of realleging the previously dismissed claims for additional consideration by the Court.

In addition, despite tweaking the wording of the claims in the third amended complaint, the Plaintiff clarifies in the response to the motion to dismiss that she understands that these claims were dismissed, but she included them in the third amended complaint for appellate purposes only. (ECF

No. 65 at 3.) Thus, the Court finds no grounds to reconsider the claims or dismiss them again, since they have already been dismissed.

**4. Sanctions**

The Defendant twice infers that Rule 11 sanctions are warranted for the Plaintiff. The first time relates to the Plaintiff's response to the motion to dismiss, in which the Plaintiff argued that the Defendant abused the discovery process by refusing to provide access to financial records. According to the Plaintiff, the discovery abuse made it difficult to determine "the extent to which Trust funds were utilized for her individual benefit and/or her individual actions in rendering the Estate and the Trust incapable of paying the Note," and difficult to properly allege a cause of action against The Defendant. (ECF No. 65 at 2.) The Defendant, in her reply, argues that she complied with discovery as much as required at this point, and contends that the Plaintiff's argument indicates that she essentially admits she has no actual facts to support a fraudulent transfer claim against the Defendant individually. (ECF No. 70 at 1.) Therefore, the Defendant argues that the Plaintiff's pleadings border on a Rule 11 violation. (*Id.*)

The Defendant's second invocation of a Rule 11 violation pertains to the Plaintiff's third amended complaint reasserting causes of action previously dismissed by the Court. The Defendant contends that "[t]here is no procedural reason for the causes of action to be reasserted after the Court has dismissed them except to unfairly prejudice or harass Defendant." (ECF No. 70 at 3.) The Defendant then cites to several cases where the court sanctioned the plaintiff for disregarding a court order. (*Id.*)

The Court finds no sanctionable conduct. First, "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule

11(b)." Fed. R. Civ. P. 11(c)(2). The Defendant did not file a separate motion. Although a court on its own initiative may order a party to show cause why sanctions should not be awarded, *see* Fed. R. Civ. P. 11(c)(3), the Court finds no overt grounds for sanctions. Rule 11 requires a party to represent to the Court that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The Plaintiff has adequately stated a claim against the Defendant in her personal capacity. Simply because the Plaintiff needs access to financial records to establish the specific facts necessary to ultimately support a fraudulent transfer claim does not signify that the Plaintiff has violated Rule 11.

As for realleging dismissed claims, the Plaintiff was not prohibited from refiling the claims, since they were dismissed without prejudice. Furthermore, the Plaintiff never indicated that she expected the Defendant to reargue any substantive grounds for dismissal. Because the Defendant's brief retort to the Plaintiff's inclusion of the dismissed claim could not have resulted in any significant burden on the Defendant, the Court finds that sanctions are not warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Plaintiff has adequately stated a fraudulent transfer claim and a tortious interference of contract claim against the Defendant in her personal capacity. Accordingly, it is hereby **ORDERED** that the Defendant's motion to dismiss or motion for more definite statement is **DENIED**.

SIGNED this 30th day of March, 2018.

_____
ALIA MOSES
United States District Judge